972 F.2d 344
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, ex rel.; Charles I. MCCOY;
Seavac International, Incorporated-USA,
Plaintiffs-Appellants,
v.
SEAWARD MARINE SERVICES, INCORPORATED, Defendant-Appellee.
 No. 91-1642.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 6, 1992
Decided: August 3, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.
 Scott Alton Mills, FALK & CAUSEY, Washington, D.C., for Appellants.
 Jerome P. Facher, HALE & DORR, Washington, D.C., for Appellee.
 James H. Falk, Sr., James H. Falk, Jr., John M. Falk, FALK & CAUSEY, Washington, D.C., for Appellants, on brief.
 James L. Quarles, III, HALE & DORR, Washington, D.C.; Buel White, Richard H. Saltsman, VERNER, LIIPFERT, BERNHARD, MCPHERSON & HAND, Washington, D.C., for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WILKINS, NIEMEYER, and HAMILTON, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Charles McCoy and Seavac International Inc.[1] (the "Relators") appeal the district court's order granting judgment as a matter of law in favor of Seaward Marine Services, Inc. (Seaward) and, in the alternative, a new trial. Fed. R. Civ. P. 50, 59. The Relators brought this qui tam[2] action under the False Claims Act, 31 U.S.C. §§ 3729-33 (the Act).
 
 
 2
 The Relators alleged that Seaward submitted false claims to the United States Navy (Navy) in connection with its contracts for providing ship hull-cleaning services. The Relators claimed that Seaward improperly: (1) billed for the cost of performing a partial hull-clean when the cost was in excess of a full hull-clean, (2) billed the Navy for mileage costs and per diem reimbursement on the same day, and (3) billed the Navy for per diem reimbursement for divers residing in the same area in which contract work was performed.
 
 
 3
 The jury returned a verdict in Seaward's favor on the first claim and in the Relators' favor on the second and third claims in the amount of $763,620, which was trebled under provisions of the Act.
 
 
 4
 Finding that the Relators failed to carry their burden of proving a false claim, the district court granted judgment as a matter of law in favor of Seaward, and in the alternative a new trial. This appeal followed.
 
 
 5
 We agree with the holding of the district court that the Relators failed to show that Seaward knowingly submitted a false claim to the United States Government, therefore, we affirm the decision of the district court.[3]
 
 
 6
 * Seaward is a private contractor that performs a substantial amount of contract work for the Navy. Its services primarily consist of underwater cleaning of hulls and propellers on a variety of Navy ships. To provide this service, Seaward maintains teams of divers in zones which cover the Navy's areas of operation. Seaward provided these services in accordance with three consecutive fixed-price, indefinitequantity contracts. The particular contracts under which Seaward allegedly mischarged the Navy were the 1984 and 1989 contracts (Contracts).
 
 
 7
 With respect to the East Coast operations, the Contracts required Seaward to maintain a base office in Norfolk, Virginia. The Contracts provided that the Navy would reimburse Seaward for the per diem expenses of its divers, at a flat rate, as follows:
 
 
 8
 The Contractor will also be reimbursed for the reasonable actual subsistence costs (including lodging) incurred after arrival at and prior to departure from a CONUS [Continental United States] remote work site.... The limitations applicable to subsistence will be in accordance with the Joint Travel Regulations for Department of Defense [ (JTRs) ]....
 
 
 9
 (Contracts Joint Appendix (J.A.) 1540, 1394). With respect to the East Coast operations, a remote work site is any work site other than the home base in Norfolk. The amount of the per diem reimbursement varied from location to location, depending on the monetary limitations established by the JTRs.
 
 
 10
 The Contracts also allow Seaward a fixed amount per mile for the costs of moving men and equipment to a remote work site-referred to as mobilization-and the same amount per mile for the cost of returning men from the remote work site-referred to as demobilization.
 
 
 11
 Mobilization/Demobilization are the total costs including crew salary incurred by the Contractor to move the equipment and crew to and from work locations [i.e. remote work sites] (outside of the normal base of operations) cited in the Task Assignment.
 
 
 12
 (Contracts J.A. 1392, 1538). The Contracts provide that these charges, collectively referred to as mob/demob charges, could not be incurred "simultaneously" with per diem charges, and neither mob/demob nor per diem expenses could be paid for operations in Norfolk. (Contracts J.A. 1394, 1540).
 
 
 13
 Seaward paid the per diem to its men for each day they were present at a remote work site. Seaward also billed for mob/demob costs for every day the men and equipment were in transit from or to a remote work site. As a result of these practices, on days when a crew arrived at or departed from a remote work site, Seaward billed for both mob/demob costs and per diem reimbursement. This is because, on such days, the crew was present at the remote work site for part of the day and in transit for part of the day. If the crew was in transit for an entire day and neither arrived nor departed a remote work site on that day, they did not receive a per diem reimbursement. The Relators contend that this policy violated the Contracts' provisions against billing mob/demob costs and per diem costs simultaneously.
 
 
 14
 Seaward paid the per diem to divers at remote sites even though some of the men maintained residences near the remote work site. The Relators contend that this policy was fraudulent. Although the contract does not specifically prohibit this, the Relators contend that the Contracts' reference to the JTRs incorporated the substantive provision of those regulations which, among other restrictions, precluded the payment of per diem expenses within the area of residence.
 
 
 15
 At trial, two witnesses from the Navy with contracting responsibility testified. One, the contracting officer, John Vollmer, was called by the Relators. The second, Michael S. Dean, the head of the Navy's Underwater Ship Husbandry Division, was called by Seaward.
 
 
 16
 Mr. Vollmer was the procuring officer with authority to sign and execute contracts on behalf of the Navy. Vollmer testified that Seaward was entitled to bill for per diem reimbursement incurred at work sites other than Norfolk, Virginia. He did not specifically testify that mob/demob and per diem could not be paid on the same day or that it was improper to seek per diem reimbursement for divers who lived near a remote work site. Vollmer did testify that Dean was the official responsible for overseeing the Contracts. Dean stated that he was responsible for the day-to-day supervision of the Contracts, that he initiated necessary changes, and that he wrote the 1989 contract. He testified that any location outside of Norfolk was a remote work site and that Seaward was entitled to reimbursement of per diem costs, regardless of the divers' residence, so long as the diver was at a remote work site. He further testified that no provisions of the JTRs applied to the parties' contractual relationship, other than the monetary ceiling limitations, and that it was permissible for Seaward to bill mob/demob and per diem costs on the same day, provided the crew arrived or departed the remote work site on that day.
 
 
 17
 Seaward's President, John Armstrong, also testified that it was his understanding that the JTRs did not apply to the Contracts outside of the monetary ceiling limitations. He confirmed that Seaward paid per diem regardless of the divers' residence and billed for per diem and mob/demob expenses on the same day if the divers were both present at the remote work site and traveled on that day.
 
 
 18
 The district court determined that the unambiguous meaning of the word "simultaneously" did not encompass "on the same day." Furthermore, the district court stated that, even if the term was ambiguous, the clear testimony of both parties was that the Contracts permitted same day charges for per diem and mob/demob. The district court held, therefore, that Seaward was entitled to judgment as a matter of law on the same day charge claim.
 
 
 19
 With respect to the Relator's claim that it was improper, pursuant to the JTRs, to bill for per diem at remote work sites for divers who resided near those sites, the district court noted that the parties to the Contracts also agreed the JTRs, except with respect to per diem monetary limitations, did not apply to the Contracts. The residence of a diver, therefore, was irrelevant. The district court held that Seaward was entitled to judgment as a matter of law on this claim.
 
 II
 
 20
 The standard for granting a judgment as a matter of law is essentially the same standard as that used for granting summary judgment. In discussing the relevant inquiry on motion for summary judgment and motion for directed verdict,[4] the Supreme Court stated: "the primary difference between the two motions is procedural ... In essence, though, the inquiry under each is the same: whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).
 
 III
 
 21
 We agree with the district court's holding. In order to state a claim in this qui tam action, the Relators were required to plead and prove that Seaward:
 
 
 22
 knowingly present [ed] or caus[ed] to be presented, to an officer or employee of the United States Government, or member of the Armed Forces of the United States a false or fraudulent claim for payment or approval.
 
 
 23
 31 U.S.C. § 3729(a)(1) (emphasis added). The use of the term "knowingly" has a special meaning within the context of the Act.
 
 
 24
 Knowing and Knowingly defined-For purposes of this section, the terms "knowing" and "knowingly" mean that a person, with respect to information-
 
 
 25
 (1) has actual knowledge of the information;
 
 
 26
 (2) acts in deliberate ignorance of the truth or falsity of the information; or
 
 
 27
 (3) acts in reckless disregard of the truth or falsity of the information,
 
 
 28
 and no proof of specific intent to defraud is required.
 
 
 29
 31 U.S.C. § 3729(b).
 
 
 30
 The Relators' claims are based on an alleged false interpretation of the Contracts by Seaward. As the district court noted, even if there is ambiguity in a contract, the parties' construction of that contract generally controls. Management Sys. Assocs. v. McDonnell Douglas Corp., 762 F.2d 1161, 1172 (4th Cir. 1985), (citing Cole v. Indus. Fibre Co., 157 S.E.2d 857 (N.C. 1931)). If both the contractor and the government interpret the contract one way throughout the contract's history, it is unthinkable that the contractor's billings which follow this common interpretation could constitute a false claim. Dean, the Navy's hull cleaning program director, contract technical advisor, and the author of the 1989 contract, testified that the per diem and mob/demob costs billed to the Navy by Seaward were appropriate. Armstrong, the President of Seaward also testified to this effect.[5] It cannot be said, therefore, that Seaward "knowingly" submitted a false claim.[6] The Relators failed to show an essential element of a false claims action and judgment as a matter of law was appropriate. Accordingly, we affirm the decision of the district court granting judgment as a matter of law in favor of Seaward.
 
 AFFIRMED
 
 
 [1]
 McCoy is a former employee of Seaward who now works for Seavac. Seavac is a direct competitor of Seaward
 
 
 [2]
 A qui tam action is an action brought by individual(s) under federal law which provides for a penalty for the commission or omission of a certain act. The penalty, recoverable in a civil action, is shared by the government and the individual(s). Qui tam literally means"on behalf of." Black's Law Dictionary 1251 (6th Ed. 1990). Such an action is called a qui tam action because "the plaintiff states that he sues as well for the state as for himself." Id
 
 
 [3]
 Our decision obviates the necessity of considering the district court's conditionally granting a new trial
 
 
 [4]
 As of December 1, 1991, both the directed verdict and judgment notwithstanding the verdict are referred to collectively as"Judgment as a Matter of Law" under Fed. R. Civ. P. 50
 
 
 [5]
 The Relators claim that there is a conflict in Armstrong's testimony on this point. We agree with the district court, however, that a comprehensive reading of Armstrong's testimony allows only one construction, i.e, that Armstrong interpreted the Contracts to permit same day charges and per diem reimbursement for divers residing near the remote sites. The Relators also argue that the actions of a Seaward supervisor, in informing a diver who lived near a remote site that he could not receive the per diem, indicated that Seaward's true interpretation was that the Contracts did not permit payment of per diem to divers residing near a remote site. However, the action of a single supervisor in one instance does not amount to a course of conduct, particularly when there was no evidence that the supervisor was told this was the proper interpretation of the Contracts, and where Seaward billed the Navy in accordance with Armstrong's interpretation and contrary to the supervisor's action
 
 
 [6]
 The Relators emphasize that, at least with respect to ninety-two particular claims, it is clear that per diem charges were improperly billed. They base this on Armstrong's testimony that billing for per diem, while the crew was in Norfolk, was improper, and the summary of expense documentation indicated that demob to Norfolk occurred on the same day that travel to Norfolk occurred. The Relator's effort to differentiate these claims fails for two reasons. First, the only basis for the Relator's assertion that per diem and mob/demob were paid while the crew was in Norfolk was informal calendar entries prepared by a Seaward clerk. The only testimony concerning the meaning of these entries was given by that clerk. She testified that the entries did not mean the crew was paid per diem in Norfolk. Secondly, the Relators presented no evidence that the ninety-two claims were any different from the other claims in which mob/demob and per diem were paid on the same day, i.e., no evidence was given that the crew was not present at the remote site sometime during the day the per diem was paid